UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CR-60 |
| | ) | (VARLAN/SHIRLEY) |
| EMMANUEL J. MOORE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This criminal case is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate C. Clifford Shirley on October 20, 2008 [Doc. 27], which addresses defendant's pending Motion to Suppress [Doc. 13]. Following an evidentiary hearing on defendant's motion and the parties' filings of post-hearing briefs [Docs. 18; 19], Magistrate Judge Shirley entered a R&R recommending that defendant's motion to suppress be denied. [*See* Doc. 27.] Defendant filed objections to the R&R [Doc. 29] and the government responded concurring with and encouraging the Court to adopt the R&R [Doc. 30].

**I.  Standard of Review**

As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the R&R to which defendant objects. In doing so, the Court has carefully considered Magistrate Judge Shirley's R&R [Doc. 27], the underlying briefs [Docs. 13; 15; 18; 19], defendant's objections [Doc. 29], the government's response [Doc. 30], the transcript

of proceedings before Magistrate Judge Shirley [Docs. 26], and the exhibits admitted at the suppression hearing [*see* Doc. 17]. For the reasons set forth herein, the Court will sustain defendant's objections, and the motion to suppress will be granted.

## II. Analysis

### A. Physical Evidence

Defendant objects to Magistrate Judge Shirley's conclusion that defendant gave free and voluntary consent to the patdown of this person. Defendant argues that there are many circumstances shown on the videotapes and listed in defendant's Supplemental Memorandum that Magistrate Judge Shirley did not take into consideration and that the testimony and videotapes show that he gave officers consent to search only because he thought that an attempt to refuse would be futile, and thus his consent was not voluntary. The Court has engaged in *de novo* review and agrees with defendant that the government did not meet its burden of showing that defendant's consent was free and voluntary.

Even pursuant to a legal traffic stop, an officer does not automatically have the authority to preform a patdown search of a person in the vehicle that has been stopped. *Bennett v. City of Eastpoint*, 410 F.3d 810, 824 (6th Cir. 2005). Rather, the officer must have either a reasonable suspicion that the person is armed and dangerous or obtain free and voluntary consent from the individual. *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Magistrate Judge Shirley found that Officer Wallace did not have reasonable suspicion to justify the patdown search of defendant. Neither party objects to this finding and the Court agrees that the officers did not have reasonable suspicion

2

to search defendant's person. Accordingly, the focus of the Court's analysis will be on whether the government met its burden of showing that defendant gave Officer Wallace free and voluntary consent to search his person.

Whether consent is free and voluntary is a question that must be determined on a case-by-case basis by considering the totality of the circumstances–including the characteristics of the defendant and circumstances surrounding the search. *See Schneckloth*, 412 U.S. at 226. "[C]onsent must be proved by clear and positive testimony, and, to be voluntary it must be unequivocal, specific, and intelligently given, uncontaminated by any duress or coercion." *United States v. Scott*, 578 F.2d 1186, 1188-89 (6th Cir. 1978) (citations omitted). Among the factors the Court should consider in accessing the totality of the circumstances are "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999).

The burden to prove that the defendant freely and voluntarily consented falls upon the government. *Schneckloth*, 412 U.S. at 222. However, a defendant arguing coercion "must show more than a subjective belief of coercion, but also some objectively improper action on the part of the police in order to invalidate consent." *United States v. Elkins*, 300 F.3d 638, 648 (6th Cir. 2002) (citation and internal quotations omitted).

The Court finds that though defendant expressly consented to a search of his person, the government did not meet its burden of showing that this consent was freely and

3

voluntarily given. Defendant testified that when Officer Wallace asked defendant if he could search his person, though defendant did not want to be searched, he felt that Officer Wallace "was going to do it regardless." [Tr. at 75.] On cross-examination, defendant elaborated in response to questions from the Assistant United States Attorney ("AUSA"):

| | |
|---|---|
| AUSA: | You are aware of what you can and can't do, when it comes to officers with the KPD, aren:t you? |
| Defendant: | Yes. |
| AUSA: | So you are aware that you do have a choice? |
| Defendant: | Not really. Not in that area.[1] They are going to search you, regardless. It doesn't matter. |
| AUSA: | Regardless of what you think they can do legally, when you are posed a question by an officer "Can I search you?" you know you can answer yes or no, don't you? |
| Defendant: | I mean, you probably could. They still going to do it anyway. |
| AUSA: | You could have answered no, if you wanted to, couldn't you? |
| Defendant: | Like I say, I didn't have a choice. |

[Tr. at 76-77.] There is nothing in the record which suggests that defendant was lying about his belief that he was going to be searched regardless of if he had answered no, and, in fact, Officer Wallace's actions immediately prior to defendant giving consent support defendant's testimony that he believed withholding consent would be futile.

---

[1]The stop and search took place in Walter P. Taylor Homes, a subsidized housing project known to be high crime area.

The videotapes when viewed together, show the details of what occurred immediately prior to and during the search of defendant's person. The Court finds the following to be the precise sequence of events:[2]

| | |
|---|---|
| 23:53:30 | Officer Roncska bangs on the roof of Mr. Bailey's car and asks Mr. Bailey to step out. |
| 23:53:31 | Mr. Bailey gets out of the car. |
| 23:53:33 | Officer Roncska begins a patdown search of Mr. Bailey's person without asking permission. |
| 23:53:58 | Officer Wallace tells defendant to step out of the car. |
| 23:54:01 | Defendant gets out of Mr. Bailey's car. |
| 23:54:01-23:54:04 | Officer Roncska tells Mr. Bailey, "I'm just going to feel you up man and make sure you got no weapons to hurt me, alright?" There is no audible response from Mr. Bailey. |

---

[2] The video feed from Officer Roncska's vehicle gives a high quality visual depiction of the stop, as well a clear audio recording of sounds picked up by Officer Roncska's microphone. [*See* Ex. 1.] Office Wallace's conversation with defendant is not audible on this video. [*See id.*] The video feed from Officer Wallace's vehicle does not give a good visual image as most of the scene is blocked Officer Roncska's vehicle and the glare of flashing police lights, however, it does provide a clear audio recording from Officer Wallace's microphone, including Office Wallace's conversation with defendant. [*See* Ex. 3.] Thus, in order to determine the totality of the circumstances of the stop, the two videos must be considered together.

As noted in footnote one of the R&R, the time stamps from the officers' recordings are not synchronized. However, the recording from Officer Roncska's vehicle shows Officer Roncska banging on the roof of Mr. Bailey's car when the timestamp indicates it is 23:53:30 and that banging can be heard on the recording from Officer Wallace's vehicle when the timestamp indicates it is 23:34:22. Thus, the Court can match up the exact timing of the events visually depicted on the recording from Officer Roncska's vehicle and the conversation audible on the recording from Officer Wallace's vehicle. The Court has used the time given by the timestamp on the recording from Officer Roncska's vehicle and converted the time from the recording from Officer Wallace's vehicle.

5

| | |
|---|---|
| 23:54:02 | Officer Wallace pats defendant's shoulder, turning defendant toward the car, and asks defendant for the first time if he can search him. |
| 23:54:04 | Defendant responds, "I mean . . . sh– . . . I ain't . . ." Officer Wallace points to the top of Mr. Bailey's vehicle and places his hand on defendant's back, guiding him to lean in toward the vehicle. |
| 23:54:05 | Defendant places his hands on the top of Mr. Bailey's vehicle. |
| 23:54:06 | Officer Wallace asks defendant if he can search his person a second time as Officer Wallace pushes defendant's legs apart with his foot and keeps his hand is on defendant's back holding him in place against the vehicle. |
| 23:54:07 | Defendant says, "Go ahead." Officer Wallace begins a patdown search of defendant's person. |

[*See* Exs. 1; 3.]

Officer Wallace's actions toward defendant are consistent with defendant's testimony that he believed that Officer Wallace planned to conduct a search regardless of defendant's response to the officer's request for consent and such actions are objectively improper. Defendant did not respond affirmatively to Officer Wallace's first request for permission to search. Officer Wallace had indicated that defendant was to place his hands on the top of the car, made physical contact with defendant to turn him to face the car and have him lean toward the car, and used his foot to get defendant to spread his legs apart prior to defendant responding, "go ahead," to Officer Wallace's second request to search. Office Wallace's actions were physically coercive and, therefore, objectively improper.

In addition, by the time Office Wallace asked defendant for permission to search his person, Officer Roncska was searching Mr. Bailey on the other side of the vehicle without

6

having first received Mr. Bailey's permission. From defendant's position in the car, he likely would have witnessed his companion being searched without giving consent. Based upon these findings of fact, along with the other circumstances of the search, the Court finds that the government has not met its burden of showing that the consent Officer Wallace received from defendant was free and voluntary.

Consideration of the remaining factors listed in *Worley*, that is, defendant's age, intelligence, and education defendant's understanding of the right to refuse to consent; defendant's understanding of his constitutional rights; and the length and nature of detention, also support the finding that the government has not met its burden of showing that defendant's consent was not freely and voluntarily given. Though defendant admitted this was not his first experience with law enforcement when drugs and guns where involved, his testimony suggests that his experience of how officers act in the particular area of Knoxville in which he was stopped led him to the conclusion that officers would search him even if he did not consent. While defendant indicated that he knew that he could say no to Officer Wallace's request to search his person, he stated that he did not believe that he could actually stop the officer from searching him.

The Court notes that its conclusion here is limited to specific facts and circumstances presented by this case. This opinion is not meant to suggest that a defendant will be successful in challenging consent every time he argues that he believed that refusing consent would be futile. Instead, the Court's conclusion here is based upon the totality of the circumstances specific to this case. As stated above, the facts that Officer Wallace initiated

7

physical contact with defendant prior to asking for and receiving consent, that defendant did not give Officer Wallace consent the first time he asked, and that defendant watched Officer Roncska search Mr. Bailey without receiving consent, along with defendant's testimony that he knew the officers would search regardless of whether he gave consent, leads the Court to the conclusion that the government did not meet its burden showing that defendant gave free and voluntary consent. Even considering these facts, the Court recognizes that whether defendant's consent was free and voluntary is a close call. However, because the government bears the burden of demonstrating that consent was free and voluntary, the Court finds that the evidence obtained from the search must be suppressed.

### B. Defendant's Statements

In his motion to suppress, defendant moves to suppress any statements he made as the product of the illegal search. In addition to requiring the exclusion of evidence directly obtained from an illegal search,

> [T]he exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint.

*Murray v. United States*, 487 U.S. 533, 536-37 (1988) (citations and internal quotations omitted). Derivative evidence is excluded because it is said to be "fruit of the poisonous tree." *See Segura v. United States*, 468 U.S. 796, 804 (1984).

In the R&R, because Magistrate Judge Shirley found that the search was legal, he did not consider whether defendant's statements should be excluded pursuant the fruit of the

8

poisonous tree doctrine. Instead, Magistrate Judge Shirley found that defendant's statements were not subject to the exclusionary rule because, although he was in custody, he did not make the statements in response to a custodial interrogation. Defendant does not specifically object to this finding, and the Court agrees that defendant's statements were not given in response to an interrogation. However, the in light of the Court's finding that the search of defendant's person was illegal, the Court concludes that defendant's statements in response to the discovery of contraband on his person must be excluded as derivative of the illegal search. Specifically, defendant's statements related to the gun, immediately after its discovery during the illegal patdown search, will be suppressed. This finding is not meant to apply to defendant's statements that were freely given and not derivative of the illegal search.

## III. Conclusion

Because the government did not meet its burden of showing that defendant did not freely and voluntarily give his consent to be searched, defendant's objections to the R&R are **SUSTAINED**. For the reasons set forth herein, the Court **ACCEPTS in part** the R&R [Doc. 27], that is the conclusion that Officer Wallace did not have reasonable suspicion to search defendant's person and **REJECTS in part** the R&R [Doc. 27], that is the conclusion that the government proved that defendant freely and voluntarily consented to the search and the conclusion that defendant's statements, which were derivative of the illegal search, need not be suppressed. Accordingly, defendant's Motion to Suppress [Doc. 13] is hereby

9

**GRANTED** and the evidence obtained from defendant's person and defendant's statements which were derivative of the illegal search will be excluded from evidence at trial.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE