| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EMMANUEL J. MOORE, ) <br> ) <br> Defendant. ) | No.: 3:08-CR-60 <br> (VARLAN/SHIRLEY) |

## MEMORANDUM AND ORDER

This criminal case is before the Court on the United States of America's Request for Reconsideration of Memorandum and Order Granting Defendant's Motion to Suppress Evidence [Doc. 34]. Defendant filed a response in opposition to the government's motion [Doc. 35], and the Court heard oral arguments from each party during a hearing on the issue. After careful consideration of the evidence in the record, the parties' arguments, and the relevant law, the Court will deny the government's motion.

**I. Background**

On February 22, 2008, Officer David Roncska stopped the car in which defendant was riding because defendant was not wearing his seatbelt and Officer Wallace arrived to assist. The officers ordered both defendant and the driver of the vehicle out of the car and conducted a pat down search of each of them. During the search of defendant's person, Officer Wallace discovered a .45 caliber gun and cocaine. As a result of this incident, defendant was charged with knowingly, intentionally, and without authority, possessing with the intent to distribute

five grams or more of cocaine base and knowingly possessing a firearm in furtherance of a drug trafficking crime.

Defendant filed a motion to suppress [Doc. 13] the evidence discovered from the pat down search arguing that the search was illegal because officers did not have reasonable suspicion to conduct such a search and he did not freely and voluntarily consent to being searched. Following an evidentiary hearing on defendant's motion and the parties' filings of post-hearing briefs [Docs. 18; 19], Magistrate Judge Shirley entered a Report and Recommendation ("R&R") [Doc. 27] concluding that the officer did not have reasonable suspicion to search defendant's person, but that defendant had consented to the search. Accordingly, Judge Shirley recommended that defendant's motion to suppress be denied.

Defendant objected to the conclusion in the R&R that he gave free and voluntary consent [*see* Doc. 29] and the government responded concurring with and encouraging the Court to adopt the R&R [Doc. 30]. After reviewing the R&R, the parties' filings, the transcript of the suppression hearing, and the police videos of the traffic stop and search, the Court entered a Memorandum and Order [Doc. 33] concluding that the defendant did not freely and voluntarily consent to the search and sustaining defendant's objection to the R&R. The Court did not engage in *de novo* review of the issue of reasonable suspicion because there was no objection to Judge Shirley's conclusion on that issue at that time. The government then filed the motion for reconsideration now before the Court.

**II. Analysis**

The government moves for reconsideration based upon the following arguments: (1) the United States, as the prevailing party, was not previously required to object to the magistrate judge's finding that the officers did not have reasonable suspicion to conduct a *Terry* pat-down and thus, an objection to this finding has not been waived; (2) the officers had reasonable suspicion to conduct a pat-down search; (3) the defendant freely and voluntarily consented to being searched; and (4) the exclusionary rule's deterrent effect is outweighed by the substantial cost of letting the defendant go free and, therefore, should not be applied in this case pursuant to *Herring v. United States*, 129 S.Ct. 695 (2009).

Defendant responds arguing that the officers did not have reasonable suspicion particularized to this defendant based upon the general factors listed by the government; the evidence supports the Court's conclusion that there was not valid consent; and *Herring* does not support the government's argument against exclusion, but only reiterates the good faith rule regarding police reliance on an insufficient warrant.

As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the R&R to which there are objections.

### A. The Government Was Not Required to Object Previously to the Magistrate Judge's Recommendation Regarding Reasonable Suspicion

When a magistrate judge issues a recommendation to resolve a question in a party's favor, that party need not object to the magistrate judge's conclusion on a secondary issue, which was resolved against the party. *See Turpin v. Kassulke*, 26 F.2d 1392, 1399-1400 (6th

3

Cir. 1994). The rationale for this rule is that to force a prevailing party to object to secondary issues would frustrate judicial economy and the purpose of the Magistrate Judge Act, 28 U.S.C. § 636. *See id.* at 1400.

Here, the government was the prevailing party in the R&R because, although Magistrate Judge Shirley concluded that the officer did not have reasonable suspicion to conduct a pat-down search, he ultimately recommended that defendant's motion to suppress the evidence be denied on the ground that he gave free and voluntary consent to be searched. Both parties and the Court agree that the government was not required to object to the recommendation in the R&R regarding reasonable suspicion previously, and therefore, it has not waived its right to object to the finding of no reasonable suspicion now that it is the non-prevailing party.

### B. The Officers Did Not Have Reasonable Suspicion to Conduct a Pat-down Search

During a traffic stop, the officer may conduct a "reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual . . . ." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The officer must point "to specific facts that demonstrate reasonable suspicion that the individual is armed and dangerous" in order for the Court to find the frisk legal. *Bennett v. City of Eastpointe*, 410 F.3d 810, 824 (6th Cir. 2005). "Reasonable suspicion is based on the totality of the circumstances and must require articulable reasons and a particularized and objective basis for suspecting the particular person of criminal activity." *United States v. Wilson*, 506

4

F.3d 488, 492 (6th Cir. 2007) (citing *Joshua v. DeWitt*, 341 F.3d 430, 443 (6th Cir.2003)); *see also Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)) (internal quotations omitted) ("Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person . . . of criminal activity.").

In *United States v. See*, No. 08-3484, 2009 WL 2191455 (6th Cir. July 24, 2009), the Sixth Circuit recently overturned a district court's finding that an officer had reasonable suspicion to effectuate a *Terry* stop. The reasons the district court cited in concluding that the officer had reasonable suspicion were:

> (1) it was 4:30 a.m.; (2) the men were parked in a high-crime area; (3) before beginning his shift, [the officer] had been instructed to pay special attention to non-resident loiterers because of a recent increase in robberies; (4) there were three men in the car; (5) the car's interior light was off; (6) the car was parked away from the apartment building in a dim portion of the lot; and (7) the car did not have a front license plate.

*Id.* at *4. The Sixth Circuit found that the combination of all of these factors was not enough to support a finding of reasonable suspicion. *Id.* at *5. In reaching this conclusion, the Sixth Circuit noted, "The first three factors cited by the district court are context-based factors that would have pertained to anyone in the parking lot at that time and should not be given undue weight." *Id.* at *4. The court further found that these factors combined with the remaining factors did not provide the officer with reasonable suspicion because the failure to have a front license plate was not necessarily a crime and the fact that "there were three men in an

5

unlit car in the parking lot of a housing complex and that they had not chosen to park in one of the spots closer to the building" did not show criminal activity was afoot. *Id.* Accordingly, the Sixth Circuit reversed the district court's denial of defendant's motion to suppress. *Id.* at *5.

In *United States v. Wilson*, 506 F.3d 488 (6th Cir. 2007), the Sixth Circuit also found that officers did not have reasonable suspicion to search the passenger of a vehicle which officers pulled over for a seat belt violation. Before the district court, the government argued that the following facts justified the pat down search of the defendant: both the defendant and the driver were acting extremely nervous when pulled over, the driver's was rambling nonsensically, the driver admitted to having served time on a federal gun charge, neither the defendant nor the driver owned the vehicle, there was a disparity between the driver's Memphis driver's license, the Kentucky license plates on the car, and the driver's statement that he lived in Tiptonville, and, after the driver ended a cell phone call, he told defendant "They're coming." *Id.* at 493. The district court determined that because most of these facts concern the actions of the driver and not the defendant, the officers did not have reasonable suspicion that defendant was armed and dangerous. *Id.* The Sixth Circuit determined that, although the statements of the driver were suspicious, possibly indicate that he was involved in some sort of criminal activity, and were relevant to the issue of whether defendant was armed and dangerous, without more they were not enough to justify a pat down of the defendant. *Id.* at 495. Additionally, the fact that defendant did not own the vehicle and defendant's nervousness were not enough to justify the search. *Id.* Accordingly, the

6

appellate court upheld the district court's suppression of the evidence obtained from the search of the defendant's person. *Id.* at 496.

Similarly to both *See* and *Wilson*, the Court finds that the totality of the circumstances in the case now before the Court were not sufficient to provide the officers with reasonable suspicion that defendant was armed and dangerous to justify a pat down search of his person. There were three main factors both officers discussed in explaining why they decided to search defendant and the driver of the vehicle: (1) time of day; (2) location in a high crime area, with known narcotics trafficking and weapons possession; and (3) defendant's nervousness. [Suppression Hrg Tr. at 9, 11-12, 41, 54, 55, Sept. 15, 2008.] Officer Wallace explained that he concluded that defendant was nervous based upon defendant's rapid breathing, the stillness of his body and hands in his lap, the fact that he was looking around, and the fact that his feet and legs were shaking. [*Id.* at 55.] Officer Roncska also testified that he observed that defendant's body and arms were rigid. [*Id.* at 27-28.]

Additionally, both officers testified on direct examination that they thought defendant might attempt to flee when he opened his car door after he had been told to stay in the car. [*Id.* at 15-16, 57.] Officer Wallace also testified that later in the encounter when he asked defendant if he had anything on him, although defendant answered no, he hesitated, which was a bit abnormal and indicated to Officer Wallace that he might in fact have something illegal on his person. [*Id.* at 58-59.]

From *See*, it is clear that, while both factors are relevant, the lateness of the hour and the location in a high crime area are not enough to support a finding of reasonable suspicion.

7

2009 WL 2191455 at *4. Additionally, from *Wilson*, it is clear that defendant's nervousness is not enough on its own. 506 F.3d at 495-96 (citing *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995). The Court does not feel that the combination of these and other factors in this case support reasonable suspicion.

The officers' observations regarding defendant's nervousness and the possibility that he was going to flee are both weakened by the officers' own testimony. Officer Roncska also testified that besides defendant's and the driver's nervousness, he did not see anything in the car that would give him reason to think there was criminal activity afoot. [Suppression Hrg Tr. at 30.] Officer Wallace testified that defendant seemed comfortable talking to him and that he did not try to flee while he was waiting on his citation for the seat belt violation. [*Id.* at 67.] Additionally, on cross examination, Officer Wallace stated that the reason defendant opened the door was to hand over his license. [*Id.* at 62.] Defendant also confirmed that the reason he opened the door was to hand his identification to the officer and that his purpose was not to flee. [*Id.* at 73.] With these factors weakened, and the other factors not enough on their own, based on the totality of the circumstances, the officers did not have reasonable suspicion to believe that defendant was armed and dangerous.

The government argues that *United States v. Saddler*, 445 F. Supp. 2d 862 (S.D. Ohio 2006), *aff'd* 254 Fed. App'x 527 (6th Cir. 2007), supports its position because the court found reasonable suspicion when officers testified about patting down an "unusually nervous" defendant late at night, in a high-crime area. However, in addition to those factors, the court found that the defendant's evasive behavior, including backpedaling away from

8

officers, and the flight of the other three individuals he had been standing with when they saw law enforcement approaching supported a finding of reasonable suspicion. *Id.* at 871. Similar additional factors were not present in this case, and accordingly, *Saddler* is distinguishable.

### C. Defendant Did Not Provide Free and Voluntary Consent to Be Searched

The government objects to the Court's finding that defendant did not give free and voluntary consent to be searched. In support of this position, it argues that the Court added a requirement not mandated by the law when it stated that defendant did not believe that he could actually stop the officer from searching him. The government argues that the Court added this factor to those stated in *United States v. Worley*, 193 F.3d 380 (6th Cir. 1999).

*Worely* states that, among the factors the Court should consider are "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *Id.* at 386. Contrary to the government's position that the Court added a non-required factor to its consideration, the Court believes that defendant's state of mind regarding the effect of his words on the officer's search is something that must be considered in assessing defendant's understanding of the right to refuse consent. Construing the defendant's right to refuse consent as the right to utter the word "no" even though officers would search anyway does not provide defendant with any meaningful right. Thus, in determining whether

9

defendant understood his right to refuse consent, it was appropriate for the Court to consider that even though defendant knew he could say no to the officer's request to search his person, he did not believe that he could actually stop the officer from searching him.

Additionally, the *Worely* list of factors is not meant to be an exhaustive list, but rather, a list of some factors that may be considered by the Court in accessing the totality of the circumstances. *United States v. Worley*, 193 F.3d at 386 (stating that, *inter alia*, the things for the court to consider are the listed factors). Because the list of factors is not exhaustive, even if the Court considered evidence that does not fit within one of the listed *Worely* factors, the Court did not err. Accordingly, the Court finds that defendant's belief that the officers would search his person even if he refused consent was an appropriate factor for the Court to consider, and it supports its finding that defendant did not give free and voluntary consent.

The government also objects to the Court's finding regarding consent arguing that the Court incorrectly noted that defendant watched Officer Roncska search Mr. Bailey without receiving consent. The Court notes that this statement was based upon the Court's own review of the video evidence in the case in which defendant was present and in close proximity to Mr. Bailey as he was searched. However, the Court recognizes the conflicting testimony cited by the government, wherein, defendant stated that he could not see what was happening to Mr. Bailey. [*See* Suppression Hrg Tr. at 74.] The Court notes that, even without consideration of defendant's observation of the search of Mr. Baily, the Court still would find that consent was not freely and voluntarily given.

### D. The Exclusionary Rule Applies in This Case

The government argues that, even if the Court finds that there was not reasonable suspicion and defendant did not consent to be searched, the extreme sanction of the exclusionary rule should not be applied in this case. The government notes that the Supreme Court has repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation. *See, e.g.*, *United States v. Leon*, 468 U.S. 897 (1984); *Arizona v. Evans*, 514 U.S. 1 (1995); *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357 (1998).

The government argues that the Court should apply the recent Supreme Court case, *Herring v. United States*, 129 S.Ct. 695 (2009). *Herring* set forth a balancing test for Court's to apply in determinating whether evidence, though illegally obtained, should be excluded. *Id.* at 702. *Herring* states that,

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct. . . . .

*Id.* Accordingly, the Court should weigh the level of deterrence that will be provided to police officers against the cost to the judicial system and society by excluding the evidence that would support a conviction of a guilty and possibly dangerous person. *See id.* at 700-701 (*citing United States v. Leon*, 468 U.S. 897 (1984)).

The factual circumstances regarding the unlawful nature of the search in *Herring* were significantly different from the case now before the Court. In *Herring*, officers arrested the defendant pursuant to a warrant listed in a computer database. 129 S. Ct. at 698. They

11

searched defendant incident to what they believed to be a lawful arrest. *Id.* They later discovered that the warrant had been recalled but the recall had never been entered into the database. *Id.* Because the officers reasonably believed that the arrest and search were lawful at the time these events occurred, application of the exclusionary rule would not serve as a deterrence. *Id.* at 701-02.

Based upon these factual differences, the Court determines that *Herring* does not apply to this case. Here, the officers did not search defendant incident to what they believed to the be a lawful arrest. Instead, the officers intentionally searched defendant's person under circumstances which did not amount to reasonable suspicion and without defendant's consent. In order for the search to be lawful, the officers were required to have reasonable suspicion that defendant was armed and dangerous or obtain defendant's consent prior to searching his person. Because the conduct of the officers was intentional and they should have known it was unlawful, exclusion of the evidence in this case will have a deterrent effect on officers.

This analysis is consistent with current Sixth Circuit law. In *See*, decided after *Herring*, the Sixth Circuit found that there was no reasonable suspicion for the search and it accordingly reversed the district court's denial of defendant's motion to suppress. 2009 WL 2191455. It did so without applying the *Herring* analysis.

For all of the reasons just stated, the Court will apply the exclusionary rule here.

**III. Conclusion**

Accordingly, the United States of America's Request for Reconsideration of Memorandum and Order Granting Defendant's Motion to Suppress Evidence [Doc. 34] is hereby **DENIED**. The Court's prior decision to grant defendant's Motion to Suppress [Doc. 13] remains effective.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>UNITED STATES DISTRICT JUDGE